### EASTERWOOD v. WILLINGHAM et ux.
### No. 10943.

Court of Civil Appeals of Texas. Dallas.

Feb. 13, 1932.

R. B. Howell, of Winnsboro, for appellant.

Justice & Sigler, of Athens, for appellees.

JONES, C. J.

Appellant, John W. Easterwood, on August 5, 1929, instituted suit in trespass to try title to 52 acres of land in Henderson county, against appellees, R. E. L. Willingham and wife, Bessie Willingham, the parties all residing in Henderson county. A judgment adverse to appellant was entered, and the appeal is duly prosecuted to this court. The following is a sufficient statement of the facts:

The term, "appellee," will refer to R. E. L. Willingham, and the term, "appellees," will refer to Willingham and wife. On October 7, 1924, appellee, then a single man, executed a valid deed of trust to Andrew Kingkade, as trustee for the benefit of Oklahoma Farm Mortgage Company, a corporation with its principal offices in Oklahoma City, to secure an indebtedness to the said farm mortgage company, evidenced by a note, executed by appellee in the principal sum of $200. On the same date, appellee executed a second deed of trust to Kingkade, as trustee for the benefit of the Oklahoma Farm Mortgage Company, to secure the payment of a series of ten notes executed by appellee to the farm mortgage company, in the sum of $7 each, the first note due December 1, 1925, and the others due respectively on December 1st of each year thereafter to and including December 1, 1934. The first deed of trust created a first lien to secure the payment of the $200 note against the 52 acres of land in question, situated in Henderson county and described by metes and bounds in the deed of trust. The second deed of trust created a second lien on the same land to secure the payment of the series of $7 notes.

On January 27, 1928, appellant purchased from Theresa Ephriam, the then owner, the $7 note maturing December 1, 1928, and duly recorded the transfer of the deed of trust lien in Henderson county. Theresa Ephriam purchased this note from the Oklahoma Farm Mortgage Company on May 1, 1926, and such purchase was evidenced by a written transfer of the same date. All of the instruments, creating or transferring a lien on said land, here mentioned, were duly recorded in Henderson county. The annual interest on the $200 note was payable on December 1st of each year. Some time prior to the maturity of the said annual interest and the $7 note in issue, appellee received notice thereof from the Oklahoma Farm Mortgage Company, and prior to December 1, 1928, sent to the Oklahoma Farm Mortgage Company a postal money order for $20, reciting in a letter that it was in payment of the $13 interest note and the $7 note which would mature December 1, 1928. Such payments from December 1, 1925, to this 1928 payment had been made in the same way.

On December 14, 1928, appellee received a letter from the former vice president of the Oklahoma Farm Mortgage Company, which in 1926 had been placed in the hands of a receiver, stating, in effect, that he had been given credit for the $13 payment of interest on the $200 note, but returned to appellee the $7 for payment of the note, by means of his personal check, stating that such note had been transferred to appellant, and that payment should be made to him. This was the first knowledge appellee had of appellant's ownership. Appellee at once went to see appellant in the town of Athens, Henderson county, and offered to pay him the $7, stating that he did not know until he got the letter from the representative of the Oklahoma Farm Mortgage Company that appellant was the owner of the note. Appellant declined to accept payment and referred appellee to his attorney, H. A. Justice. Appellee at once called on the attorney in his office and was informed that appellee was in default of payment, and that by the terms of the note he would now have to pay the $50 attorney fee contracted for therein, in addition to the $7. This appellee declined to do and several times thereafter offered to pay the $7 due on the note, but each time it was declined. The trustee in the second deed of trust declined to act, and appellant, acting under authority of the deed of trust, appointed his attorney, H. A. Justice, substitute trustee. The substitute trustee advertised the land for sale, under the power of sale clause in the deed of trust, and sold same, at the appointed time and place, to appellant for $7, as the highest bidder, and said trustee's deed was duly executed to appellant. No notice, either verbal or written, was given appellee that such sale was to take place, and appellee was not present when the sale was made, and knew nothing of same until he received written notice, stating that Easterwood was the owner of the land by virtue of the substitute trustee's deed, and demanded possession of the land. Appellee declined to surrender possession of the land, on which he and his wife were living as their home, and declined to recognize the validity of the trustee's deed. This suit resulted. When the land was sold by the substitute trustee, it was sold subject to the $200 indebtedness and subject to the remaining $7 notes.

This record establishes the fact that appellant is the owner of the land, unless the substitute trustee's deed is invalid, and its validity depends upon the existence of the fact that appellee was legally in default in payment of the $7 note, for such default is a necessary precedent to the exercise of the power of sale given in the deed of trust.

Appellant's pleading was only in the form of trespass to try title. Appellee's answer consisted of a plea of not guilty and specific pleas denying that he had been in default, alleging the facts heretofore stated, and tendering into court the amount of the note.

The case was submitted to the jury on

special issues, after the refusal of the court to give either party a requested peremptory instruction. In answer to these special issues, the jury found, in effect: (1) That appellee mailed a post office money order to the Oklahoma Farm Mortgage Company, for the purpose to pay the $7 note in question; (2) that said money order was mailed in time to reach the Oklahoma Farm Mortgage Company on December 1, 1928; (3) that appellee, at the time he sent said post office money order, did not know that appellant owned the $7 note, or that it had been transferred to him; (4) that when appellee found out that appellant owned said $7 note, he offered to pay the same to appellant as soon thereafter as he could reasonably do so; (5) that the 52 acres of land in question, on March 5, 1929, the day of the trustee's sale, was of the reasonable cash value of $1,040. These findings are all supported by evidence and are adopted as the findings of this court.

Appellee, in his pleadings, tendered to appellant the sum of $7, the amount alleged to be due appellant on the note in question, and paid such sum into court, in full satisfaction of the note and the deed of trust lien securing same. On these findings the court entered the following judgment: "It is therefore ordered, adjudged and decreed by the court that the plaintiff, John W. Easterwood, take nothing by reason of this suit, and that he be denied any foreclosure upon the land involved herein, and that the defendant, R. E. L. Willingham, have judgment cancelling and holding for naught deed from H. A. Justice, as substitute trustee, to John W. Easterwood, of record in vol. 142, pp. 419-20-21, of the Deed Records of Henderson County, Texas, and that he have judgment for all costs in his behalf expended."

This judgment should have given appellant judgment for the $7 paid into court by appellee, and it is amended to that extent.

Appellant properly raises in this court his right to peremptory instruction. He bases this contention on the ground that appellee did not pay to appellant, owner of the note, the $7 due December 1, 1928, and therefore was in default and, under the terms of the deed of trust, appellant could enforce the provision authorizing the sale of the land to pay such debt; that appellee's offer to pay, not including the $50 attorney fee, which had matured when the offer was made, was invalid and from which he could claim no benefit; and that appellee had constructive notice of appellant's ownership of the note by reason of the recorded transfer of the lien to appellant.

We cannot agree with appellant in this contention, for we do not believe that appellee was in default within the meaning of that term, as used in the deed of trust. The term "default" may be defined as a failure of a party to perform a legal duty. The legal duty rested upon appellee to pay this $7 note on December 1, 1928, and, if his failure to pay same on said date resulted from anything for which appellee was responsible, then, in law, he was in default. Appellee had constructive notice only that appellant owned the note. This constructive notice only visited knowledge on him of the fact that appellant was the owner of the lien securing the note, and a payment of same to any one else would be at his peril. It did not visit him with notice that appellant was the only one to whom payment could be made, or the place where payment should be made. The note he executed provided that payment should be made in Oklahoma City in the offices of the Oklahoma Farm Mortgage Company, but also provided that, if it was not paid at maturity, payment should be made at the First National Bank in the City of Dallas. He had theretofore made similar payments to the farm mortgage company, in response to notices received by him from such company. Appellant and appellee lived near each other and were acquainted, and appellant could easily have informed appellee that he owned the note, but this he did not do, but permitted appellee to pay in the usual manner in which he had theretofore made such payments. The first knowledge appellee had that appellant owned the note was on December 14, 1928; and appellee acted at once in an effort to discharge the indebtedness. We think, under the the facts of this case, appellee was never in default, and that the apparent default was caused by the negligence of appellant to notify appellee that he was the owner of the note.

With the amendment to the judgment, as heretofore suggested, it is our opinion that the judgment should be affirmed.

Reformed and affirmed.